Good afternoon, may it please the Court. My name is Lawrence S. Lussberg, I'm from the firm of Gibbons PC, I represent the defendant appellant Herman Friedman in this matter, I respectfully request two minutes for rebuttal. Granted. Thank you. Your honors, this matter presents two issues of first impression in this circuit and one of the straightforward application of this court's precedents. Taken together, they all go to the fairness of the trial that Mr. Friedman had and to the procedural reasonableness of his sentence. The first issue is whether economic coercion is relevant to intent in bribery cases. The government agrees that this is an issue of first impression, but argued successfully in the district court for an instruction that not only precluded the consideration of economic coercion and did so in graphic editorial terms, but also did so in a way that confused and undermined the entrapment instruction, the model instruction of this court that followed. Mr. Lussberg, in order to raise the issue of economic coercion, does the party who raises that issue have to have made a viable claim of economic coercion? Of course, your honor. Okay. And what is Mr. Lussberg's viable claim of economic coercion? Well, it was Mr. Friedman's, but not mine, but. And that's a good thing, right? Yeah. As I sit here after the Passover holiday, I'm very pleased that it's his, not mine. Your honor, the threshold, of course, for an appropriate showing that's necessary to get a jury instruction is relatively low. There has to be enough so that the jury ought to, in the first instance at least, have the opportunity to rule on the matter. Here, there was respectfully plenty. First of all. Really? What is his economic coercion argument? Yes, your honor. The first is that, and I'm going to just lay out five or six points that I think. Go ahead. Start with one. Okay. First, background. Mr. Zanardelli, the construction official in this case, was a known extortionist. And when I say known. No, no. I'm not talking about him. I'm talking about Mr. Lussberg. What is the economic coercion? Mr. Friedman. Your honor, it's concerning me that you think I'm the defendant in this matter. No, she's just got Lussberg on her mind. I know you long enough. I would expect that from Judge Greenaway. Your honor, but that's relevant. All right. Go ahead. You say it your way. But it's a reasonable question. The issue of what's in Mr. Friedman's mind that created economic coercion is in part who this construction official was with whom he was dealing. That was a person who had engaged in a pattern of extortion as the evidence showed for literally decades. That was also a person who the evidence showed everybody knew to be doing that. In fact, he himself testified on cross-examination that the word was out as to what he was doing. But here's what he did. After initially he told Mr. Friedman that he had to get a variance, and after Mr. Friedman filled out the necessary variance forms, nonetheless, when several days later Mr. Friedman went to court on the matter, his deputy, Mr. Acosta, did not allow for the complaint against him to be... You know, you're such a good lawyer, Mr. Lussberg, as I know from many years. But you're not answering my question specifically. Mm-hmm. What is the economic coercion on Mr. Friedman? Okay, I'm sorry if I'm not addressing it as directly. Yeah, well, let's stick to that because we have a lot of cases. Yes, for sure. Here's, again, what happens in this case in some, and this is fully briefed, so I won't go over every single... Oh, yes, your brief is excellent, as I expected. Good. I won't go over every single fact. But the bottom line here is that what Mr. Zanardelli did to Mr. Friedman was he raised with Mr. Friedman repeatedly the possibility that Mr. Friedman could get him to exercise his discretion in Mr. Friedman's favor. He then used that leverage as an opportunity, in essence, to extort a bribe. Okay. That's not what we're talking about, I think. Mm-hmm. Okay? Here's what I'm concerned about. In every bribery case, there's a hint of economic coercion because the bribe is a form of economic coercion. But in order to get this instruction, you need more than that. And that's the question. What is there in this case that takes it outside of the normal bribery case and deserves the instruction you want? And in dollar amount. Okay. In dollar amount, because we're talking economic coercion. Okay. There's two, really two elements to it. May I add another ingredient? Mm-hmm. Just to confuse things further. You rely heavily on Judge Friendly's opinion in Barash. And I wonder if you could fit Mr. Friedman's case within the profile that Judge Friendly there has. Before you do that, though, please answer our question, which is in dollar amount, what is the dollar amount of the economic coercion? Okay. I understand now. There are two things. The first is that Mr. Friedman needed to sell his building. What do you mean he needed to sell his building? He wanted to sell his building. He wanted to sell. But he has a net worth of $7 million. Right. So when you say he needed to sell his business, he had a, he was living someplace? That's, of course, in the scheme of things, the question is what is the dollar amount? The dollar amount is a building worth a million dollars that he wants to sell. There is also the fact that he's a, as the evidence showed, he was a significant property owner, and this is not going to be able to be reduced to dollars and cents. In that area, in West New York, Union City, West New York area, and it was very clear that if he did not do what Mr. Zanardelli wanted him to do, that he was facing significant problems going forward. Wait a minute. Here's the problem. Okay. I get your argument, but you say he needed to sell, right? Now, it's clear from the facts that there is a gap of about, as I get it, seven or eight to be paid, and then the actual payment. And we see from the facts that the actual payment didn't occur until Steiner came along. You've got a real seller. Steiner says, take care of this, or there's no deal. So now, all of a sudden, let's run. Here's the five grand, and now we've got a deal. Actually, help me about the economic coercion. If I have the facts, help me on the facts. No, no, and those facts are not exactly correct. Okay. You're correct up until the actual events of March 2008. And what happens there is that there's efforts to negotiate with respect to the building. We can talk about some of the questions of what Mr. Friedman's conduct was in there, because that goes to the Brady claim, which is a significant one. And then what happens is the purchaser, Mr. Steiner, says, you've got to take care of this unit. Mr. Friedman doesn't take care of it then. In fact, he doesn't do anything in terms of paying the bribe until after the offer has already been withdrawn. So it isn't the case that he's now suddenly paying the bribe in order to make the sale. In fact, by that time, the offer had been taken off the table, as the evidence showed. Isn't he doing it to induce Steiner to come back to the table? There's no evidence of that. And, in fact, even after he paid the bribe, there is zero evidence that he then tried to get Steiner to come back to the table and purchase the building. Well, let's talk about it. Because it didn't happen. Well, come back then. Where's the economic coercion? What is the degree or the nature of the economic coercion that takes this out of the normal case? Your Honor, the answer to that question is, to me, extremely apparent. You have a landowner, a property owner in the city of West New York. He needs to get certain permits. He needs to get COs. These things are all worth a great deal of money. In the end, in this case- They're not worth a great deal of money. The difference between what he had was an apartment house that had authorization for 15 apartments, and he was trying to sell a building with 16 apartments. That's, you know, and the difference between- apparent authorization for and a 15 apartment building, which there was authorization for. Well, there's a lot in that question. First of all, respectfully, I don't agree that there was no authorization. In fact, what Mr. Zanardelli specifically said in his direct examination was that if he had seen this one particular document, that would have changed his mind about the whole thing. So legally, apparently, the only evidence of record in this case is that it was authorized for 16 units, or that previously there had been 16 units, so that was what was grandfathered in. But be that as it may, it goes way beyond the issue of one unit. It goes to the question, the fundamental question of the relationship between property owners and a construction official. Well, wait a minute. Do you agree that he is not an impecunious man? Of course, Your Honor. This is not a- He owns 12, 100% of 12 buildings, 12 buildings with a lot of apartments, and 50% and 25%, I didn't count, another 20-something buildings. So to say economic coercion such that he would pay a bribe in order to sell this building, just, you know, to people who don't have $7 million net worth, it just doesn't seem very persuasive. Your Honor, actually, the fact that he's such a substantial landowner in that area goes to the very reason why he would feel specifically that he had to pay this bribe, because as the evidence showed, the power of a construction official, probably everywhere, but what we know for sure in Hudson County, New Jersey, is vast. And what the evidence showed in terms of the cross-examination of Mr. Zanardelli is just how miserable he can make the lives of landowners if they don't pay him what he asks for. But every landowner has the same argument that you're positing, and that is that Zanardelli can exert such influence on me, right, that it will adversely affect whatever you want to say, my net worth, the house I live in, whatever. That's a song. And our point, as I understand it here, is we deserve this special instruction. And our question to you is you want this special instruction, you've got to take it out of the ordinary. And the ordinary is a bribe exerts some economic coercion on the person who has to pay it. Your Honor, it can be serious economic coercion for everyone, though. What the power that a construction official has is the power to have a significant, serious economic effect on those landowners. It may very well be- We haven't let Judge Pollack ask his question. Go ahead, Judge. Mr. Lesburg, I guess I'm pursuing Mr. Greenaway's question in a somewhat different form. Judge Greenaway. I'm wondering what the perceived threat of economic loss to Mr. Friedman was. If he didn't pay the bribe and he'd have to go to court and get a variance and so forth, how are those difficulties to be differentiated from the ordinary business expenses, business concerns, business anticipations that any substantial landowner has? His ability to survive in the real estate market of Hudson County, New Jersey, depends upon his ability to buy and sell buildings, to get COs and variances, to get along with the construction officials. The evidence is clear that this particular construction official, if given the opportunity, will make the lives of the landowners in Hudson County sufficiently miserable that they literally can't survive. Now, it may be that that- You don't mean literally can't survive. Well, you know what? I mean, it's almost literally- It's about survival of a man with a $7 million network and 12 buildings, 100% of apartment buildings, and another 20 or so of less. You don't mean literally survive. We have seen cases where you have people, minority people, who can't survive. Mr. Friedman can survive. Your Honor, I'm sure that the economic coercion theory would be as applicable to the poor as the rich. It may be that somebody who is more on the edge would have a better claim to serious economic coercion. But one has to accept the person that we have before us. And that person, in this case, Mr. Friedman, was in a situation where survive- And the real question is, what was the leverage that Mr. Zanardelli had over him? It may be, Judge Greenaway, that the leverage he had over him is the leverage that he has over many other landowners. But it also may be that that means that those landowners, if they were put in the same situation, would also have an economic coercion argument. And at the end of the day- Let me just say this. Yeah, because your red light's on. I know. My red light's on. That at the end of the day, that is a matter that the jury should have decided. There was- Under the government's construction, Judge Pollack, of Barash and the Second Circuit cases, the matter of whether there was serious economic harm on the one hand and whether there was an entitlement to the benefit on the other were matters that should have been presented to the jury, and the jury should have had an opportunity to decide them. Thank you. Thank you, Your Honor. Your red light is on. Can I give him just a parting thought he doesn't have to answer? You don't have to answer. Right. Can I, though? No. I want you to think about this for a moment because I want to hear the answer on rebuttal because I don't want to use up any more of our time, and that is this. You want us to adopt an instruction, right, that is thus far not part of our jurisprudence. And my question that I'd like an answer to when you come back is how can we go about doing that? What should we be looking to? Because everything that you've said so far is let's get it before the jury again because the facts here are really terrible, but how are we to determine when the facts require this instruction that you're asking us to now make part of our jurisprudence?  I'll be prepared to answer that on rebuttal. Thank you. Sorry, but we have a lot of cases. No, no, no problem. Ms. Sedlowski? May I ask you a question? My name is Caroline Sedlowski, and I represent the United States. I was just about to ask you what your name was. I got that one. I knew. It would be helpful to me as a predicate to what I think you're about to argue if I understood whether the government acknowledges that economic coercion is a valid partial defense to a bribery charge. My understanding was that, indeed from the brief, that the government didn't think that was good law. You're right, Your Honor. Rejected the Second Circuit's view. Is that the settled doctrinal position of the United States? Your Honor, that is the position of the United States, that there is no defense of economic coercion, nor should there be any instruction that economic coercion is relevant to intent, both because that basically undermines the decision that there's no defense of economic coercion, and because in this circuit, as the defendant has admitted, once the coercive element, or you've established coercion, once you've established that someone had the intent to give a bribe, knowing that a bribe is a bad thing to do, and whether or not that bribe is given to obtain something lawfully or unlawfully, doesn't change the fact that you have a corrupt intent under the law of this circuit. And so you would undermine that instruction. As Judge Thompson said, it would be confusing. That's really putting it mildly. It would be contradictory to say now, really actually though, it's relevant to your intent, whether you felt this was the right thing to do. You either had serious, it's really a duress defense that is being argued. And as far as the government is concerned, duress, and as far as the circuit is concerned, duress is something very remarkable. I mean, it requires a gun to your head, essentially. And so to have this- I didn't hear that. It involves what? A gun to your head. A gun to your head. I mean, it involves serious risk of harm. And so to import into the court's instructions this much watered down sort of defense, and you see language from extortion in the defendant's proposed offense. I don't know what that's doing there. It is, the defendant essentially proposed a misstatement of law. And that's the government's position. Well, I'm sure you understand that my reason for asking the question is because I perceive at least some merit in Mr. Friedman's argument through Mr. Luskberg that economic coercion can magnify, be a legitimate partial defense. I found Judge Friendly's opinion persuasive to that extent, but I'm not announcing that that's the right answer, but it seemed to me a compelling one. But for the reasons that my colleagues have been pressing in their questions to Mr. Luskberg, I'm not at all sure whether this case can fit within that profile. The evidence here does not show that Friedman believed that he was being extorted. There's no evidence that Zanardelli ever held up anyone's permissions to do anything. The only evidence in the record was that he helped people to do things. He never threw barriers in front of someone. So there's no reason, there's no evidence in the record that would show Friedman believed now he was going to be held hostage to Zanardelli, nor is there any evidence in the record that Zanardelli actually believed that he was legally entitled to this unit. He had several opportunities to say as much. He didn't say it to Zanardelli. He didn't say it to the magistrate judge. He didn't say it to Steiner when he was trying to pass this property off. So there's no evidence in the record that he actually believed it. He certainly didn't testify. He doesn't have to testify, but there's no evidence in the record that Zanardelli actually believed it. And your honors went through at length the dubious likelihood that he felt any kind of serious economic coercion, that he experienced any kind of serious economic coercion. So if you were writing an opinion in this case and wanted to take your position, how would you frame the rule of law? Your honors, because this circuit has held that economic coercion or I'm sorry, that it is not a defense to bribery to believe that you have a legal entitlement to what you're seeking, then how can it be relevant to your intent that you believe that you are justified in doing this, which is one of the Second Circuit's requirements. This has to be something that you are justified in seeking. You have to persuade the jury that that is your sincere belief. But even if you persuaded the jury that that was your sincere belief, that wouldn't be a defense. And so how can it be relevant to your intent? Okay, in other words, you have to, is it a jury question? It is, right. Judge Paula's question presupposes that it would be a jury question. Is there enough to make it a jury question? But the court has already decided as a matter of law that regardless of what the defendant thought he was entitled to, whether he thought he was or was not entitled to this, that's irrelevant to whether he formulated the intent to pay the bribe. He formulated the intent, as long as he had the intent to pay the bribe, he willfully, he corruptly means willfully, in the context of the statute, willed him to pay the bribe knowing that that bribe was a bribe, then he's committed the illegal act. It sounds a little bit, it trenches on the entrapment defense which we held in an in-bank opinion before you were practicing law that you don't have entrapment if you are inclined to do the act. Exactly, the entrapment defense is still a viable defense. The defendant can't satisfy the elements of entrapment but that's still a viable defense. But the economic coercion at best is a form of duress, would be a complete defense if anything under the law of the circuit, but we seriously urge the court that that is at odds with this court's jurisprudence on duress. This would be sneaking in a very light standard, duress light, in the context of... I thought that was a beer. When we already know that it's not actually relevant to whether the defendant committed the crime of bribery. So if I understand what you're telling us, you're telling us that we don't really need to decide the legal question underlying because he hasn't shown enough to show that he's entitled to this instruction. That is my argument and I urge the court because so many people argue that bribery is an ambiguous, amorphous statute under which no one knows what they're going to be prosecuted for. If you open the doors to creating this possibility that there is this intent, although you don't have intent, you may not formulate intent if you can show some of these things partially, the language, it's not a complete defense, but perhaps it may be relevant, then people are left wondering, well, relevant in what way and what else do I need to show? And they're not really on notice anymore. Isn't it a slippery slope, right? Because when would you not be able to show economic coercion, right? Every defendant presented with this charge would be able to argue some form of economic coercion. They're able to say, I really wanted that benefit. I really wanted that benefit. No, but it's more, right? It's I really wanted that benefit and it's going to hurt me badly if I don't, you know, if I don't, having been put in this position. So you can't convict me. Yeah. No, it will wreak havoc with bribery prosecutions and there's a reason that no court aside from the Second Circuit in the early 60s at the beginning of this bribery statute's existence ever found that this evidence, it's not been done before. And this certainly isn't the case. I mean, there just isn't evidence that Mr. Zanardelli believed he was being coerced. Much less that there was, that there were these other elements that any court has found are required either for the instruction or the defense. And so if you wade into these waters you might create serious confusion for prosecutions of bribery. Any more questions? Do you have any more questions? You got to give me just one second. I'm going to focus so much on the other stuff. There's no jurisprudence. Is there that a failure to follow Gunter Siriotam as the defendant suggests is error? Is there? The context in which the courts have found error is when they really can't tell what the judge decided when the judge did it under a rubric of a discretionary decision or a non-discretionary decision, a departure or a variance where they didn't, then they couldn't tell whether they had the authority to review the decision or under what rubric they would review the decision. Here it's quite clear. Right. But here the argument, as I understand it, seems to be slightly different. It's like, hey, you know, there's a jumbled process even though the end result might be logical and the fault is with the process. And I just wondered, I hadn't come across any. I wondered whether you had that Gunter isn't really followed, or Gunter, however you do it, unless you go step by step with this. Well, the only context in which we've seen that is sort of in the service of finding that, you know, the reason we ask people to do this is so that we understand what they're doing when they come to this conclusion. But so flat is that. Judge Pollack did have a question. Let me ask you something that is not precipitated by Mr. Lustberg's argument, but I think it's an issue that we will have to face in this case. This addresses the whole question of whether the government adequately fulfilled its disclosure obligations under Giglio. And I must tell you that I was troubled, when I am troubled, by a statement in the government's brief that, with respect to Acosta, Friedman would apparently extend the government's obligation to disclose all exculpatory or impeaching material to statements which in any way contextualize or mitigate the impeachment. Now, that's wonderful language, but I'm afraid lurking in there is a, is a narrowing of the government's disclosure obligation. And it's hard for me, for example, to see how it matches activity in this case, matches what the Deputy Attorney General told us last January was the obligation of the prosecution to disclose anything that's going to vary the testimony that has been disclosed or the anticipated testimony that's been disclosed. I appreciate that Mr. Lustberg hasn't argued this yet, but I presume that it will be a part of the case as it comes to us for decision. With respect to Mr. Acosta, I think the principle there is no good deed goes unpunished. I think the government in disclosing, in asking him, can you conceive of any other times when you were asked to overlook violations? And then in disclosing that, even when it thought, well, maybe this isn't Brady or Giglio, believed that it was exercising at the outer limits its duty to comply with its Brady and Giglio obligation and to provide any instance, however limited. And the government, this is not a disclosure, this is not a discovery obligation. This is giving the defendant the opportunity, look, there may be something here, we don't think so, but just giving the defendant the opportunity in any instance to go follow up and find out at cross-examination or before and interviewing the witness, is there something here? At the point where the government then, if the government were to say, well, we don't really think it's something, perhaps the government is then going to be held up on the other end saying, look, you downplayed this and it's actually more serious. Who are you to say? I think the government should not be required to provide and it may be that the word context could mean many things, but in the context of this case, in the application of the case here, the facts here, the government shouldn't be required to provide its perception of this information. Isn't Callahan what the judge is referring to? I'm sorry, you said Acosta. I could visit on Callahan. Callahan, I think the government should have disclosed this information in advance. It didn't violate the law of the circuit by, it was disclosed during the testimony, so in advance of cross-examination and in time to use a cross-examination, but I do agree that there was an obligation to disclose this information. My problem on the Acosta side is that it strikes me that if I were defense counsel and received a statement that Mr. Acosta said, well, I was told to ignore violations, apparent violations on a dozen properties, but I was not told that that remark was then accompanied by, you know, but as I think it over, it doesn't, I don't think it adds up too much. I would feel that I had incomplete information. At least a good argument could be made to that effect. Well, I appreciate that, Your Honor. This was unimportant to the defendant. The defendant says he mentioned it in his opening. He did not mention it in his opening at the cited pages. I don't think that, that there's any time in which the defendant felt that whether there was some previous pattern of Acosta and Zanardelli working together surfaced at trial. So I don't think this actually was  his argument in any event. Do you have any questions? No, I'm good. I'm good, thank you. Okay. You finished? Yeah.  Thank you, Your Honor. Thank you. Mr. Lusberg has been writing an answer to your question. I have a lot to do in two minutes. Let me start with the Brady issue right from the start. It was devastating. Just as you say. I was, it was, what I was told those witnesses were going to say is not what they said and the government knew it in both cases. This was a classic sandbagging and I relied on it because I did open and I talked about how Acosta was Zanardelli's lieutenant. I based that as I said at the trial upon that disclosure. Then that was not the disclosure that actually had been made. It was a very different scenario. How were you prejudiced? Pardon me? How was the defendant prejudiced? You had the opportunity to cross-examine the witnesses, right? The opportunity, but Your Honor, if you look at what happened in the trial, Judge Thompson precluded us both in, with respect to, especially with respect to Callahan from essentially confronting with the statement and definitely precluded us from calling the FBI agents who would have said what was actually said. We did not have a meaningful opportunity to contest those statements. That is absolutely clear and it was devastating, particularly Callahan's because with respect to Callahan, the result ended up being that both the court and the jury had the impression of Mr. Friedman having hidden this information from the purchaser instead of having disclosed it. It was enormously important information. Why didn't you have pursued the same defense strategy which was that Friedman did not have the requisite intent? Wasn't that your, wasn't that basically your defense? That was the defense but there's many subsidiary facts that go into that. They're the facts that the jury must consider in coming up with intent which by the way brings us back really to the coercion issue which is it is the law of this land that you can't curtail a defendant's ability to present any and all evidence really with respect to intent and that's all we want. Now Judge Greenaway what amounts to serious economic harm? Respectfully I think that's the kind of thing that a jury should decide but as, but it's appropriate and makes sense as Judge Althusser said in a somewhat different context to understand the relationship between bribery on the one hand and extortion on the other. If you are the victim of extortion it may go to your intent in the sense that you don't realize that what you're doing is violating the law or it may go to your intent in some other sense such as that you may feel coerced or you may be under sufficient duress that your actions are not voluntary. Whichever it is those facts should be thrown in the hopper and a jury should decide them. If I might Your Honor let me just very quickly say with respect to your Gunter question there are case after case in this circuit and the applicable section of the court that order in Gunter is critical. That if the order is not followed that the risk is that an inappropriate sentence will be meted out. We've cited those cases to the court in our brief. To me this is about the most confused sentencing that you could ever see. We don't know whether the court departed. We don't see any meaningful consideration of the case.  court that I described said I don't know if it's yours I don't know if it's theirs so I'll come up with something in the middle that had no anchor in the reality of the situation. The sentencing at the very least this matter ought to be remanded for resentencing. I thank you for the additional time.